IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DEBORAH B. FOSTER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION 11-0175-WS-N** |
| ) | |
| **BRIDGESTONE AMERICAS, INC.,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

**ORDER**

This matter comes before the Court on defendant Mazda Motor Corporation's Motion to Dismiss for Insufficient Process and Insufficient Service of Process (doc. 48). The Motion has been briefed and is ripe for disposition.[1]

**I.   Relevant Background.**

Plaintiff, Deborah B. Foster ("Foster"), filed this action against Mazda Motor Corporation ("Mazda Japan"), Mazda Motor of America, Inc. ("Mazda America") and various other defendants, alleging claims for wrongful death based on a June 2009 automobile accident that claimed the life of Foster's husband, Larry Foster. Foster maintains that the accident was caused by catastrophic failure and tread separation of a tire on the 2000 Mazda B4000 pickup truck that her husband was driving.

There is no dispute that Foster properly served process on Mazda America via certified mail delivered to its registered agent in Alabama on April 14, 2011. (*See* doc. 7.) Mazda

---

[1] The parties could (and perhaps should) have resolved these service of process issues between themselves without the substantial delay and commitment of litigant and judicial resources occasioned by this Rule 12(b)(5) Motion. But this Court will neither penalize nor castigate a defendant for insisting on strict adherence to applicable rules for service of process, provided that it has reasonably interpreted those rules. Nor will this Court fault a plaintiff for holding fast to her position that she served process in a manner consistent with applicable rules, provided that such a stance is a reasonable construction of those rules rather than a calculated shortcut to circumvent them.

America has answered both the original and amended complaints, and is otherwise fully participating as a defendant herein. (*See* docs. 16, 70.) There is no contest as to the propriety of Mazda America's joinder in this action.

The parties vigorously dispute the suficiency of service of process on Mazda Japan. The record reflects that Mazda Japan is a Japanese corporation headquartered in Hiroshima, Japan. (Tang Aff. (doc. 48, Exh. A), ¶ 3.)[2] Plaintiff readily admits that she has not served process on Mazda Japan in the manner prescribed by The Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 U.S.T. 361 (entered into force February 10, 1969) (the "Hague Convention"), to which both the United States and Japan are signatories. Nonetheless, plaintiff's position is that she was not required to do so, inasmuch as she contends she properly served Mazda Japan by serving "Mazda America, as **agent** for Mazda Japan," through Mazda America's registered agent for service of process in Alabama. (Doc. 55, at 2.)[3] In plaintiff's view, she served Mazda Japan by serving the registered

---

[2] In the context of a Rule 12(b)(5) motion such as that presented here, courts routinely consider matters outside the four corners of the pleadings to ascertain whether service of process has been properly completed. *See, e.g., Hahn v. Bauer*, 2010 WL 396228, *5 (D. Minn. Jan. 27, 2010) ("In addressing a motion to dismiss based on Rule 12(b)(4) or 12(b)(5), a court necessarily must review affidavits outside the pleadings."); *Brand v. Mazda Motor of America, Inc.*, 920 F. Supp. 1169, 1171 (D. Kan. 1996) (Rule 12(b)(5) motion may be decided "by reference to affidavits" or even by conducting evidentiary hearing, without being confined to well-pleaded facts in complaint); *Thompson v. Kerr*, 555 F. Supp. 1090, 1093 (S.D. Ohio 1982) (on Rule 12(b)(5) motion, "reference to the record is permissible to determine the alleged insufficiency of service of process").

[3] The facts on this point are not as straightforward as Foster might prefer. After all, the record unambiguously reflects that Mazda America's registered agent in Alabama, CT Corporation, returned the summons and complaint to Foster because "C T Corporation System is not the registered agent for an entity by the name of Mazda Motor Corporation." (Doc. 55, Exh. 3.) The confusion stemmed from plaintiff's listing the defendant's name in the Summons as "CT Corporation, on behalf of Mazda Motor Corporation, by and through its agent, Mazda Motor of America, Inc." (Doc. 55, Exh. 2.) As served, the summons made it appear that CT Corporation was Mazda Motor Corporation's agent (which it was not) or that CT Corporation was the named defendant (which was also incorrect). In any event, Mazda America never received those service documents, apparently because CT Corporation refused them for the stated reasons. (Tang Aff., ¶ 5.) Moreover, while Foster has attempted service on Mazda Japan through Barbara Tang, whom plaintiff identifies as Mazda America's designated agent for service in California (*see* doc. 51), there is no record evidence that such service was ever completed.
(Continued)

-2-

agent of its involuntary agent. Succinctly put, the question posed by Mazda Japan's Rule 12(b)(5) Motion is whether Foster may properly serve process on Mazda Japan simply by serving Mazda America as Mazda Japan's involuntary agent, or whether compliance with the Hague Convention is necessary to perfect service on Mazda Japan directly.[4]

## II. Analysis.

### A. *The Parties Dispute whether the Hague Convention Applies.*

Mazda Japan's Motion invokes Rule 12(b)(5) of the Federal Rules of Civil Procedure, which authorizes dismissal of a complaint for insufficient service of process. "When the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally." *Bank of America Corp. v. Edwards*, 881 So.2d 403, 405 (Ala. 2003) (citations omitted).[5] Mazda Japan

---

To be clear, then, the record suggests that Mazda America was served in its own name only, and that efforts to serve Mazda Japan through Mazda America have either been rejected by the purported "agent of the agent" because of a poorly phrased Summons, or have otherwise not been completed. Of course, even if such service had been completed, Mazda Japan's challenge to the legal sufficiency of same would remain; therefore, the Court will address that issue, notwithstanding plaintiff's wobbly showing that she ever served Mazda Japan through Mazda America. Alternatively, this Order may be viewed as examining whether plaintiff's service on CT Corporation as agent of Mazda America, in turn as agent of Mazda Japan, was effective under Rule 4, irrespective of CT Corporation's refusal of same.

[4] In her brief, plaintiff suggests that Mazda Japan must have seen Foster's complaint and the summons in this case. (Doc. 55, at 11-12 & n.4.) For service of process purposes, however, it is of no consequence whether Mazda Japan was aware of or has seen the summons and complaint. After all, awareness is not the touchstone of service of process, and does not compensate for defective service. *See, e.g., Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("A defendant's actual notice is not sufficient to cure defectively executed service.").

[5] *See also Fly Brazil Group, Inc. v. The Government of Gabon, Africa*, 709 F. Supp.2d 1274, 1279 (S.D. Fla. 2010) (once objecting party identifies particular way in which service was deficient, "the plaintiff bears the burden of proving adequate service of process"); *Pelmore v. Pinestate Mortg. Corp.*, 2010 WL 520767, *2 (N.D. Ga. Feb. 8, 2010) (on Rule 12(b)(5) motion, serving party "bears the burden of proof with regard to validity of service") (citations omitted); *Brand*, 920 F. Supp. at 1171 ("Upon a pretrial motion to dismiss for insufficient service of process, the plaintiff must make a prima facie showing that service satisfied the statutory requirements ….").

has made an initial showing that service of process was not achieved on it under the Hague Convention, and that Mazda America is not its designated or voluntary agent for service. Therefore, it becomes incumbent on Foster to demonstrate that she could properly serve Mazda Japan through Mazda America as its involuntary agent for service of process, in lieu of complying with the strictures of the Hague Convention.

The Federal Rules of Civil Procedure provide that service of process may be effected on a corporation "at a place not within any judicial district of the United States" via compliance with "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," or "by other means not prohibited by international agreement." Rules 4(f)(1), 4(f)(3), 4(h)(2), Fed.R.Civ.P.[6] The parties are in agreement that Foster has neither complied nor even attempted to comply with the specific procedures set forth in the Hague Convention for service on Mazda Japan.[7] They disagree as to whether she was required to do so.

---

[6] Plaintiff criticizes Mazda Japan for citing the Federal Rules of Civil Procedure in its discussion of service of process; however, the case law confirms the applicability of the Federal Rules. *See, e.g., Cambridge Mut. Fire Ins. Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 n.2 (11th Cir. 1983) ("In a diversity action, Rule 4 of the Federal Rules of Civil Procedure governs the manner of service of process."); *Lafferty v. St. Riel*, 495 F.3d 72, 83 n.14 (3rd Cir. 2007) ("[s]ervice of process in a diversity case must accord with federal rules"); *see generally Henderson v. United States*, 517 U.S. 654, 656, 116 S.Ct. 1638, 134 L.Ed.2d 880 (1996) ("[T]he manner and timing of serving process are generally nonjurisdictional matters of 'procedure' controlled by the Federal Rules."); *Hanna v. Plumer*, 380 U.S. 460, 473, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ("*Erie* and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts ….").

[7] In brief overview, the Hague Convention "requires each state to establish a central authority to receive requests for service of documents from other countries. … Once a central authority receives a request in the proper form, it must serve the documents by a method prescribed by the internal law of the receiving state or by a method designated by the requested and compatible with that law. … The central authority must then provide a certificate of service that conforms to a specified model." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698-99, 108 S.Ct. 2104 (1988). Thus, to serve Mazda Japan under the Hague Convention, Foster would have to transmit a request in the proper form to Japan's central authority, wait for that central authority to serve the documents in a manner prescribed by or compatible with Japanese internal law, and file the proper certificate of service in this District Court after receipt of same from the Japanese central authority.

B.  *The Law of the Forum State and Service of Process on a Foreign Parent Company via a Domestic Subsidiary.*

The obvious question, then is whether the Hague Convention applies here. The Supreme Court has explained that "[i]f the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); *see also Vega Glen v. Club Mediterranee S.A.*, 359 F. Supp.2d 1352, 1356 (S.D. Fla. 2005) (whether Hague Convention applies in a particular case "depends on the internal law of the forum state," with the relevant inquiry being "whether the forum's state law requires the sending of process abroad") (citation and internal quotation marks omitted); *Brand v. Mazda Motor of America, Inc.*, 920 F. Supp. 1169, 1171 (D. Kan. 1996) ("the Supreme Court has held that if the plaintiff can serve the foreign corporation on a domestic agent under state law without a transmittal abroad, the Hague Convention does not apply, and service may be proper").[8] Thus, the Court looks to Alabama law to determine whether it required Foster to transmit documents abroad in order to serve process on Mazda Japan.

Alabama law generally provides that "service of process in a foreign country may be effected … by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention." Rule 4.4(1), Ala.R.Civ.P. Moreover, Alabama courts have typically taken a dim view toward a plaintiff's efforts to serve a parent corporation through its subsidiary. *See Edwards*, 881 So.2d at 405 ("The parent-subsidiary relationship alone is not ordinarily enough to establish agency for the purpose of service of process.") (citations omitted). That said, Alabama law authorizes service of process on a company located in a foreign country by serving its domestic subsidiary in certain limited circumstances. In particular, the Alabama Supreme Court has held that service in this manner is

---

[8]  The Supreme Court opined that plaintiffs would be well-served to abide by the Hague Convention's protocols even when they believe the law of the forum state does not require transmittal of documents abroad. As the Court explained, "The Convention provides simple and certain means by which to serve process on a foreign national. Those who eschew its procedures risk discovering that the forum's internal law required transmittal of documents for service abroad, and that the Convention therefore provided the exclusive means of valid service." *Schlunk*, 486 U.S. at 706. Had plaintiff heeded that admonition, the Rule 12(b)(5) Motion never would have come to fruition.

appropriate where the plaintiff can show either (i) that the parent corporation "exercises such control and domination over the subsidiary that it no longer has a will, mind or existence of its own, and operates merely as a department of the parent corporation"; or (ii) that the parent corporation "has complete control over the subsidiary, conducting its business and creating its policies," that the subsidiary "is a mere adjunct and instrumentality of the parent," or that the subsidiary "is merely a dummy by means of which the parent corporation does business in the state." *Ex parte Volkswagenwerk Aktiengesellschaft*, 443 So.2d 880, 884 (Ala. 1983) (citations and internal quotation marks omitted).[9] In effect, the subsidiary becomes the parent's involuntary agent in these circumstances.

In evaluating the extent of a parent company's control and domination over a subsidiary for agency purposes, Alabama courts have considered the following circumstances, among others: (a) whether the parent owns all or most capital stock of the subsidiary; (b) whether the parent and subsidiary have common directors or owners; (c) whether the parent corporation finances the subsidiary; (d) whether the parent corporation subscribes to all the subsidiary's capital stock or otherwise causes its incorporation; (e) whether the subsidiary has grossly inadequate capital; (f) whether the parent corporation pays the subsidiary's salaries and other expenses or losses; (g) whether the subsidiary has substantially no business except with the parent and no assets except those conveyed by the parent; (h) whether the parent corporation's papers describe the subsidiary as a department or division of the parent, or its business or financial responsibilities as the parent's own; (i) whether the parent corporation uses the subsidiary's property as its own; (j) whether the subsidiary's directors or executives take orders from the parent corporation; and (k) whether the formal legal requirements of the subsidiary are not observed. *See Edwards*, 881 So.2d at 406-07; *Environmental Waste Control, Inc. v. Browning-Ferris Industries, Inc.*, 711 So.2d 912, 915 (Ala. 1997).

---

[9] *See also Kingvision Pay-Per-View, Ltd. v. Ayers*, 886 So.2d 45, 51 (Ala. 2003) ("To establish proper service on a corporation by service on an alleged agent not authorized by appointment of the corporation, a plaintiff must prove that the corporation exercised a high degree of control over the alleged agent.") (citations omitted); *Horizons 2000, Inc. v. Smith*, 620 So.2d 606, 607 (Ala. 1993) ("where a subsidiary is merely an alter ego of a parent corporation, the subsidiary can be deemed an agent for service of process on the parent corporation").

### C. *Application of Alabama Test to Record Facts.*

Mazda Japan contends that the "high degree of control or domination" standard is not satisfied here. In support of this argument, Mazda Japan submits the affidavit of Barbara L. Tang, Assistant Secretary of Mazda America. (*See* doc. 48, Exh. A.)[10] Tang avers that Mazda America and Mazda Japan are separate corporations, that Mazda America has not been formally authorized by Mazda Japan to accept service of process for it, that Mazda America has its own separate board of directors, that Mazda America's officers and executives are responsible for its day-to-day operations, that Mazda America maintains separate offices and records from those of Mazda Japan, that Mazda America pays its own debts and expenses, and that Mazda America maintains a separate payroll for its employees and provides its own benefit plans. (Tang Aff., ¶¶ 3-4, 6-9.)[11]

In response, Foster submits more than a dozen exhibits spanning nearly 200 pages of content culled from the Internet, including the website www.Mazda.com, that she contends establishes Mazda Japan's high degree of control and domination over Mazda America.[12]

---

[10] As an initial matter, Foster impugns Tang's credibility by characterizing her affidavit as "disingenuous" and "of questionable worth" because she has purportedly submitted affidavits in previous litigation in which Mazda America was deemed the agent of Mazda Japan. (Doc. 55, at 11.) This argument is a *non sequitur*. That Tang may be aware that other courts in other jurisdictions applying other legal standards may have found an agency relationship says nothing about the veracity of the facts recounted in her affidavit. Besides, not having conducted an evidentiary hearing, this Court does not weigh credibility of any witness's statements, nor must it do so in order to adjudicate Mazda Japan's Rule 12(b)(5) Motion fully.

[11] As to certain of these facts, Tang avers that she is reciting what she has "been informed." (*Id.*, ¶ 8.) Plaintiff has not interposed any objection to this formulation, and the Court will not address it *sua sponte*.

[12] Plaintiff alternatively argues that the Rule 12(b)(5) Motion should be denied because Mazda Japan "has made it a pattern and practice to contest jurisdiction" (and has "habitually wasted the time of courts all across the United States in the process") and has admitted that Mazda America is its agent for service of process. (Doc. 55, at 5-6.) Neither assertion is persuasive. As to the former, that Mazda Japan might habitually insist that American plaintiffs suing it in American courts abide by the Hague Convention, to which the American and Japanese governments agreed, is not properly viewed in the nefarious light ascribed to it by plaintiff. This Court will not punish a litigant for exercising its legal rights, even if the result of doing so is inconvenient or burdensome for the opposing party or the Court. Given the state-specific nature of the inquiry as to whether the Hague Convention applies in a given case, Foster's contention that district courts in Georgia, California, and Kansas have ruled against
(Continued)

(Schmitt Aff. (doc. 55, Exh. 4), and Exhs. 5-24.) From a document styled "Mazda in Brief 2010" and apparently drawn from the Mazda website, plaintiff points to the following facts: (i) Mazda Japan lists Mazda America as one of its four "Research and development sites" around the world (doc. 55, Exh. 5, at 3); (ii) Mazda North American Operations (the d/b/a of Mazda America) commenced operations in October 1997 (*id.* at 13, 30); (iii) Mazda Japan owns 100% of Mazda America (*id.* at 8); and (iv) Mazda America imports and distributes Mazda vehicles, parts and accessories, as well as researches, tests and certifies vehicles for the North American market (*id.* at 13).

Next, plaintiff relies on a Mazda document styled "Annual Report 2010" to show that Mazda Japan reports its financial results in a consolidated manner, incorporating into its financial statements data from Mazda America and other subsidiaries. (Doc. 55, Exh. 10, at 53.) Plaintiff identifies a statement therein that Mazda Japan "has power of control through majority voting rights or existence of certain conditions evidencing control" over those subsidiaries. (*Id.*) That exhibit likewise reflects that, with respect to Mazda America's capital lease transactions concerning certain tooling and other production assets owned by an affiliated company, "[t]he actual payments of lease obligations are made through" Mazda Japan. (*Id.* at 70.) Plaintiff also relies on statements in the annual report that Mazda Japan "and its consolidated subsidiaries manage credit risks, in compliance with internal control rules and procedures," that short-term investments are "approved by our finance officer," and that subsidiaries must "follow internal control rules and procedures" and obtain Mazda Japan approval for transactions in derivative financial instruments. (*Id.* at 59, 66.)[13] Plaintiff further cites a statement that Mazda Japan and

---

Mazda Japan on agency issues, or that Mazda Japan has conceded agency status in those cases, in no way casts a pall over Mazda Japan's insistence here that, under Alabama law, service on Mazda America is inadequate. Certainly, plaintiff has not shown that the applicable agency/service principles in Georgia, California and Kansas are akin to those in Alabama; therefore, there is no reason to believe that those authorities undermine Mazda Japan's legal position here, much less suggest that Mazda Japan is conducting itself in the duplicitous manner insinuated by plaintiff.

[13] There is no indication in the record, however, about the frequency and extent to which Mazda America makes short-term bank investments and engages in derivative transactions. Without such information, it is difficult to gauge whether these controls amount to a meaningful constraint on Mazda America's financial activities.

its consolidated foreign subsidiaries jointly adopted certain accounting principles in preparing their financial results. (*Id.* at 69.) However, there is no indication as to whether Mazda Japan forced that adoption or whether Mazda America agreed to it independently.

Additionally, plaintiff identifies information in Mazda's "Annual Report 2010" concerning audits, including references to monthly meetings by a "Global Auditing Department," which "conducts internal audits at the parent company," and to "internal auditing departments … at main centers in light of sales in North America" which "work in close cooperation with the head office to carry out audits," including the dispatch of "facilitators" for certain "internal control activities." (*Id.* at 32-33.) This information is reinforced by another exhibit, which reflects that the Global Auditing Department is located at Mazda Japan and that the internal auditing department in North America "work[s] closely with the Global Auditing Department to conduct a full range of auditing tasks." (Doc. 55, Exh. 11, at 1.) The overall message here is that Mazda America works closely with Mazda Japan on auditing issues, but there is no indication of control or domination by the latter.

Foster's brief and exhibits offer similar lines of evidence on the subjects of corporate ethics, risk management, corporate values (*i.e.*, the "Mazda Way"), evaluation of productivity and market performance, and information security. (Doc. 55, at 13-25.) It is not necessary to delve into the minutiae of each of these categories of evidence because the overall themes are substantially similar to those set forth in the above areas, to-wit: Mazda Japan prescribes certain guidelines and requirements for its subsidiaries, monitors and coordinates with those subsidiaries to implement same, collaborates with its subsidiaries in identifying and achieving shared goals and objectives, and is in regular communication with its subsidiaries about a wide range of operational issues. Thus, for example, plaintiff shows that Mazda Japan offers a "Mazda Global Hotline" to employees overseas for ethical issues, that Mazda Japan has a corporate intranet in which Mazda America participates, that Mazda Japan promotes the "Mazda Way" to its subsidiaries worldwide, that Mazda Japan assists overseas production facilities with quality management systems and training, that it consults with overseas dealerships on service operations and professes support of their dealership strategies, that Mazda Japan executives visit Mazda dealerships in the United States, that Mazda Japan supports its subsidiaries in preparing and implementing policies on intellectual property, and so on. The overall picture that emerges is one of collaboration and ongoing interaction, with Mazda Japan setting certain overarching

corporate principles and visions, but working hand-in-hand with its subsidiaries to develop and implement strategies and protocols that are appropriate for each particular territory.

Based on the foregoing discussion, there is no doubt that Mazda Japan and Mazda America are linked, and their businesses interwoven, in certain respects. This is hardly revelatory, and would logically be expected in any parent / wholly-owned subsidiary relationship. But that unremarkable conclusion is not dispositive of the agency issue on which the Rule 12(b)(5) Motion turns. Rather, the relevant question is whether these linkages and synergies are so exceptional as to go beyond the ordinary parent/subsidiary relationship (which the Alabama Supreme Court has held not to be sufficient to transform the subsidiary into the principal's involuntary agent for service of process) to the point where Mazda America is an alter ego, completely controlled by Mazda Japan and lacking any independent existence.

Foster maintains that her evidence demonstrates Mazda America's alter ego status *vis a vis* Mazda Japan. In that regard, Foster argues that the evidence of control and domination here is at least as compelling as that deemed sufficient to establish agency by the Alabama Supreme Court in the leading case, *Ex parte Volkswagenwerk Aktiengesellschaft*, 443 So.2d 880 (Ala. 1983).[14] The *Volkswagenwerk* Court found "overwhelming evidence of the high degree of control" exercised by the parent over the subsidiary, including "[n]umerous requirements in the 'Importer Agreement' [that] show that [the parent] determines how [the subsidiary] operates on a daily basis." 443 So.2d at 885. For example, Volkswagen's Importer Agreement specified the following: (i) the number of subsidiary dealerships was fixed by the parent, and the location of all such dealerships had to be approved by the parent; (ii) the parent could accept or reject the subsidiary's orders (presumably, for vehicle inventory); (iii) the parent dictated signage, stationery and business forms which the subsidiary was required to use; (iv) the parent

---

[14] As in the case at bar, *Volkswagenwerk* concerned the relationship between a foreign-based automobile manufacturer (in that case, Volkswagen, a German corporation) and its American subsidiary (Volkswagen of America). Also as in this case, the relevant procedural facts in *Volkswagenwerk* were that a plaintiff had endeavored to serve process on Volkswagen Germany by serving Volkswagen America. Volkswagen Germany challenged the validity of service of process under Alabama law, reasoning that Volkswagen America was not its agent for service of process, and that service must instead be perfected on it via the Hague Convention. The Alabama Supreme Court disagreed, based on overwhelming evidence submitted by the plaintiff that Volkswagen Germany ran the day-to-day operations at Volkswagen America.

determined the number of office employees, business fieldmen, and technical fieldmen that the subsidiary must employ; (v) the parent dictated pricing and price increases to the subsidiary; (vi) the parent set the terms of vehicle warranties; and so on. *Id.* at 883-84. Aside from the Importer Agreement, the *Volkswagenwerk* decision also observed that many of the subsidiary's directors also sat on the parent's board, and that the subsidiary's board often held meetings in Wolfsburg, Germany, where the parent's corporate headquarters were located. *Id.* at 884.

By contrast, the general statements from Mazda's annual reports and promotional literature on which Foster relies establish nothing approaching the kind of ironclad control over the subsidiary's day-to-day operations demonstrated in *Volkswagenwerk*.[15] Plaintiff presents no evidence that Mazda Japan dictates to Mazda America how many dealerships to operate, where to locate them, how many employees to hire, how many vehicles to order and at what price to sell them, and so forth.[16] Plaintiff does not suggest that Mazda America's board of directors is stocked with Mazda Japan directors, much less that the board meets in Japan so as to be under Mazda Japan's watchful eye and proverbial thumb.

The fundamental point is this: Mazda America is in the automobile distribution business. Although plaintiff's evidence shows that Mazda America conducts that business subject to certain directives and guidelines of Mazda Japan, her exhibits fall well short of documenting the

---

[15] As an initial matter, it is significant that Foster's evidence consists of nonbinding marketing and shareholder materials written for a general audience, as opposed to the rubber-hits-the-road binding contractual language used in *Volkswagenwerk*.

[16] On this point, there is a disconnect between Foster's arguments and her evidence. For instance, plaintiff asserts that "Mazda Japan maintains a tight hold on Mazda America in terms of market conditions, sales performance, inventories, prices, and dealer productivity." (Doc. 55, at 23.) What evidence is cited to support such a strong assertion? Mazda Japan evaluates its subsidiaries and gives them productivity awards, and its HR General Manager asked subsidiaries to study the "seven words of the Mazda way." (*Id.* at 23-24.) In arguing that "Mazda Japan asserts dominion and control over … quality control over Mazda America," plaintiff relies on an exhibit stating just the opposite, to-wit, that Mazda Japan "makes proposals on how to address quality issues and provides support for the swift resolution of quality problems, so as to ensure the effective administration of a local staff-led quality management system." (*Id.* at 20 (quoting Exh. 16, at 2).) In the same vein, plaintiff asserts that Mazda Japan controls Mazda America's vehicle service programs, only to quote a document stating that "overseas dealerships train their service staff by themselves." (*Id.* at 20-21 (quoting Exh. 17, at 3).)

sort of micromanagement that drove the *Volkswagenwerk* decision. Rather than casting Mazda America as a mindless puppet whose strings are pulled by a domineering Mazda Japan puppeteer, Foster's evidence reveals a wholly-owned subsidiary that receives guidance from, and works closely with, the parent corporation. Mazda Japan oversees Mazda America's activities, inspects its operations, collaborates with Mazda America on quality management and training, assists Mazda America's efforts to implement intellectual property policies, provides operational support to Mazda America, issues directives on things like accounting principles and auditing, and promotes human resource training that follows an organizational philosophy espousing such concepts as "integrity" and "self initiative." But those facts in no way evince the kind of tightfisted, nuts-and-bolts, day-in-day-out control necessary to show Mazda America as a mere instrumentality or dummy. Moreover, Mazda Japan's evidence has gone uncontradicted that the two companies have separate boards of directors, that Mazda America's officers and executives are responsible for that entity's day-to-day operations, that Mazda America pays its own debts and expenses, and that their business records and payroll are separate.[17]

In short, plaintiff's showing falls far short of the quantum of proof in *Volkswagenwerk*. This evidence simply does not satisfy the stringent threshold requirement that Mazda Japan exercise such a high degree of control over Mazda America that Mazda America is merely a dummy or alter ego.[18] Rather, the evidence here strongly suggests a run-of-the-mill parent/subsidiary relationship between the two companies, which is not sufficient to impute

---

[17]  Plaintiff's few attempts to combat this evidence come up empty. By way of example, on the subject of Mazda America paying its own expenses, Foster insists that "Mazda Japan makes ***direct lease payments*** on leases for tools/equipment which Mazda America leases" (doc. 55, at 14), but the underlying exhibit on which she relies says something very different. Similarly, in arguing that Mazda Japan imposes a code of conduct on its subsidiaries, Foster quotes an exhibit demonstrating a spirit of collaboration, not imperialist edict, saying "The Mazda Group engages in regular communication with all Group companies worldwide, and the entire Group is working together to create further opportunities for interaction among personnel and cultivate a climate based on a shared point of view." (*Id.* at 19 (quoting Exh. 15, at 2).) This text is hardly proof of the sort of crammed-down mandate that plaintiff must show.

[18]  The same conclusion would be reached if Foster's evidence were evaluated under the *Bank of America Corp. v. Edwards* factors enumerated *supra*. Most of these factors either point against a finding of control and domination, or are not established by the record evidence one way or the other.

involuntary agency status to Mazda America for service of process purposes. Plaintiff having failed to meet her burden of showing that Mazda America was Mazda Japan's agent for service of process under Alabama law, the inexorable implication of that determination is that service can properly be obtained on Mazda Japan only via transmittal of documents abroad. That conclusion in turn means that the Hague Convention applies to service of process on Mazda Japan in this case.[19]

### D. *Movant's Remedy for Insufficient Service of Process.*

It is undisputed that Foster has not served, and has not attempted to serve, Mazda Japan via the Hague Convention. As such, Mazda Japan has not been properly served with process in this case. Plaintiff's attempt to show otherwise by relying on evidence of service on Mazda America (as putative involuntary agent for Mazda Japan) fails. In light of these determinations, Mazda Japan's Rule 12(b)(5) Motion is meritorious.

The remaining question is what form the relief should take. Mazda Japan has requested that it be dismissed from this action for insufficient service. But the clear weight of authority is that, unless it appears that service of process cannot be obtained, the proper remedy for insufficient service is to quash the defective service and to afford the plaintiff leave to effect service via valid means.[20] Movant having articulated no justification, and identified no authority,

---

[19] *Compare Schlunk*, 486 U.S. at 707 ("If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.") *with Brand*, 920 F. Supp. at 1171 ("if the plaintiff can serve the foreign corporation on a domestic agent under state law without a transmittal abroad, the Hague Convention does not apply, and service may be proper").

[20] *See, e.g., Umbenhauer v. Woog*, 969 F.2d 25, 30-31 (3rd Cir. 1992) ("[D]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should, at most, quash service, leaving the plaintiffs free to effect proper service.") (citations omitted); *Moberg v. 33T LLC*, 666 F. Supp.2d 415, 425-26 (D. Del. 2009) ("when there exists a reasonable prospect that service may yet be obtained … the district court should, at most, quash service, leaving the plaintiffs free to effect proper service") (citation and internal quotation marks omitted); *Plant Genetic Systems, N.V. v. Ciba Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996) ("Dismissal under Rule 12(b)(5) is not justified where it appears that service can be properly made.") (citation and internal quotation marks omitted); *Modern Computer Corp. v. Ma*, 862 F. Supp. 938, 946 (E.D.N.Y. 1994) (where service of process is insufficient, "the general rule … is that in such situations such process is quashed and the action is preserved provided there is a reasonable prospect that plaintiff ultimately will be able to serve the defendant properly"); *Montgomery, Zukerman, Davis, Inc. v.*
(Continued)

favoring deviation from that general rule here, and there being no reason to believe that service of process on Mazda Japan could not be readily obtained under the Hague Convention, the Court in its discretion declines to dismiss Foster's claims against Mazda Japan. Instead, plaintiff's purported service of process on Mazda Japan via Mazda America (*see* docs. 29, 53) is hereby **quashed**.

### III. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Mazda Motor Corporation's Motion to Dismiss for Insufficient Process and Insufficient Service of Process (doc. 48) is **granted** insofar as service was defective and is due to be quashed, but is **denied** insofar as Mazda Motor Corporation seeks dismissal of plaintiff's claims for insufficient service;

2. Plaintiff's purported service of process on Mazda Motor Corporation via its American subsidiary (*see* docs. 29, 53) is **quashed**; and

3. Plaintiff must proceed promptly to serve process on Mazda Motor Corporation under the Hague Convention, to the extent she wishes to pursue her claims against that entity. To that end, plaintiff is **ordered** to file monthly status reports, on or before the **fourth Tuesday of each month**, beginning in **August 2011**, documenting the present status of her efforts to perfect service of process on Mazda Motor Corporation.

DONE and ORDERED this 15th day of August, 2011.

            s/WILLIAM H. STEELE
            CHIEF UNITED STATES DISTRICT JUDGE

---

*Diepenbrock*, 698 F. Supp. 1453, 1461 (S.D. Ind. 1988) (in absence of evidence that service cannot be obtained on defendant, court simply quashes the defective service and allows plaintiff leave to secure proper service); *Carthen v. Baptist South Medical Center*, 2011 WL 855279, *4 (M.D. Ala. Feb. 23, 2011) ("The general rule is that when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.") (citations and internal quotation marks omitted).