IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DEBORAH B. FOSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 11-0175-WS-N |
| | ) |
| BRIDGESTONE AMERICAS, | ) |
| INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on the Motion for Partial Summary Judgment (doc. 133) filed by defendant Bridgestone Americas Tire Operations, LLC. The Motion has been briefed and is now ripe for disposition.

**I.      Relevant Background.**

This action arises from an automobile accident that claimed the life of Larry Foster ("Mr. Foster") on southbound Interstate 65 in Escambia County, Alabama on June 19, 2009. Well-pleaded (and unchallenged, for purposes of this Motion) factual allegations in the Amended Complaint reflect that a Firestone Wilderness AT radial tire mounted on the rear driver's side of Mr. Foster's 2000 Mazda B4000 pickup truck failed. (Doc. 66, ¶ 12.) When the tire failed, Mr. Foster lost control of the vehicle, which then entered the median, rolled over several times, and came to rest in the northbound lane of Interstate 65. (*Id.*, ¶ 13.) Mr. Foster was killed. The tire in question was manufactured by a predecessor of Bridgestone Americas Tire Operations, LLC ("BATO") in Wilson, North Carolina in 1999. (*Id.*, ¶ 16.)

Plaintiff, Deborah B. Foster ("Foster"), as personal representative and administrator of the Estate of Larry Foster, brought this action against BATO and several other defendants. With respect to BATO, Foster interposed Alabama state-law causes of action for negligent, wanton, or reckless conduct (Count I); strict liability (Count II); and the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD") (Count III). As pleaded in the Amended Complaint, Foster's strict liability claim posits that BATO placed the tire into the stream of commerce, that the tire

"was defective and unreasonably dangerous for its intended use and purpose" at that time, that the tire "was intended to and did reach the ultimate consumer without significant modification," that the tire failed to meet "reasonable expectations of reasonable consumers," that the risk of serious injury or death as a result of the tire's defects outweighed any benefits in placing it in the stream of commerce, and that Mr. Foster lost his life "[a]s a direct and proximate cause of the defective and unreasonably dangerous condition of the Subject Tire."  (Doc. 66, ¶¶ 35-40.)

Defendant BATO now moves for summary judgment solely as to Count II, the strict liability cause of action.  BATO's Motion turns on the purely legal question of whether Alabama law permits a claim of strict liability in the defective products context.  Both sides have briefed this narrowly circumscribed, discrete issue, which is ideally suited for disposition as a matter of law at the summary judgment stage, inasmuch as this question does not depend on any contested facts.[1]

## II.     Analysis.

The lone issue presented for resolution on BATO's summary judgment motion is whether Foster has a cognizable strict liability claim under Alabama law.  Upon careful consideration of the parties' filings and applicable law, the Court answers this question in the negative.

As an initial matter, it bears emphasis that "[t]he AEMLD is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products."  *Wyeth, Inc. v. Weeks*, --- So.3d ----, 2013 WL 135753, *3 (Ala. Jan. 11, 2013) (citation and internal quotation marks omitted); *see also Garrie v. Summit Treestands, LLC*, 50 So.3d 458, 463 (Ala.Civ.App. 2010) (describing "the strict-liability doctrine of the AEMLD") (citation omitted); *Goree v. Winnebago Industries, Inc.*, 958 F.2d 1537, 1541 (11th Cir. 1992) (AEMLD "is a modified version of strict liability that premises liability upon the sale by a manufacturer of a defective product").  In other words, Alabama courts have considered the doctrine of strict liability and have chosen not to adopt it wholesale in the products liability

---

[1]     As noted, BATO is not disputing the material factual allegations of the Amended Complaint for purposes of its Motion for Partial Summary Judgment.  Of course, insofar as there are factual differences in the parties' positions, this Court is obligated under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Therefore, for purposes of this Motion, Foster's evidence is taken as true and all justifiable inferences are drawn in her favor.

context. In lieu of simply embracing strict liability as espoused in § 402A of the Restatement (Second) of Torts, Alabama courts modified that doctrine and shaped it into the AEMLD, which has been the law in Alabama for more than three decades. In fashioning the AEMLD, Alabama courts left no doubt that they were dispensing with any notion of "no-fault" liability (otherwise known as strict liability). *See, e.g., Dennis by and through Dennis v. American Honda Motor Co.*, 585 So.2d 1336, 1338 (Ala. 1991) ("this Court rejected the no-fault concept of § 402A when it established the AEMLD"); *Atkins v. American Motors Corp.*, 335 So.2d 134, 139 (Ala. 1976) ("Because our holding rejects the no-fault strict liability concept of the Restatement, we deem it appropriate to reemphasize that our retention of the fault concept is to be treated in the context of a defective condition, which renders the product unreasonably dangerous or unsafe when put to its intended use, rather than in the context of traditional notions of negligence law."); *Casrell v. Altec Industries, Inc.*, 335 So.2d 128, 132 (Ala. 1976) (in creating AEMLD, "[w]e do not intend to impose a no-fault concept," but "we adhere to the tort concept of fault").[2]

So, instead of endorsing a purely no-fault theory of recovery for defective products, Alabama courts altered and diluted the traditional strict-liability framework, leavening it with affirmative defenses and nods to negligence theory. *See, e.g., Peek v. Merit Machinery Co.*, 456 So.2d 1086, 1089 (Ala. 1984) ("[T]he practical distinction between the Court's holding in *Atkins* and the *Restatement* is that *Atkins* allowed affirmative defenses not recognized by the Restatement's no-fault concept of liability."); *Grimes v. General Motors Corp.*, 205 F. Supp.2d 1292, 1294 (M.D. Ala. 2002) ("While the AEMLD has much in common with the doctrine of

---

[2] Federal courts applying Alabama law have consistently and uniformly recognized this principle. *See, e.g., Brasher v. Sandoz Pharmaceuticals Corp.*, 2001 WL 36403362, *12 (N.D. Ala. Sept. 21, 2001) (where plaintiff brought strict-liability claim in products liability context, opining that "[s]uch a claim is not viable under Alabama law, where the Alabama Supreme Court has specifically retained concepts of negligence in products liability cases and has rejected notions of any no-fault liability"); *Powell v. Scripto-Tokai Corp.*, 2001 WL 103445, *1 (S.D. Ala. Jan. 30, 2001) ("Alabama law rejects the no-fault precept which imposes liability equally on all sellers without regard to culpability causally related in fact to the defective condition of the produc[t]") (citation and internal marks omitted); *Judson v. Nissan Motor Co.*, 52 F. Supp.2d 1352, 1359 (M.D. Ala. 1999) (same); *Culpepper v. Weihrauch*, 991 F. Supp. 1397, 1399 (M.D. Ala. 1997) ("the Alabama Supreme Court has rejected the Restatement's no-fault strict liability concept for products liability").

strict liability in tort found in § 402A of the Restatement (Second) of Torts (1965), it is more accurately described as a hybrid of strict liability and traditional negligence concepts.").

The net result is that courts applying Alabama law have declined to recognize a freestanding cause of action for strict liability in the products liability context, finding instead that any such claim is actionable only under the aegis of the AEMLD. *See, e.g., Bodie v. Purdue Pharma Co.*, 2007 WL 1577964, *4 n.9 (11th Cir. June 1, 2007) (construing plaintiff's "strict product liability" claim as an AEMLD claim "[b]ecause Alabama's analogous cause of action for strict product liability is an AEMLD claim"); *Mosley v. Wyeth, Inc.*, 2010 WL 1416502, *4 (S.D. Ala. Apr. 5, 2010) (finding that AEMLD "governs the claims that plaintiffs alleged in this case under the heading strict liability"). In its Motion for Partial Summary Judgment, BATO asks this Court to conclude similarly that Foster's products-liability claims under Alabama law may proceed under the AEMLD (Count III) or common-law negligence (Count I), but that no strict liability cause of action (Count II) exists in this context.

Notwithstanding the foregoing authorities and principles, plaintiff insists that Count II survives because "there has been no express holding by the Alabama courts that common law strict liability claims have been merged into the AEMLD." (Doc. 144, at 3.) Foster's argument fails because the Alabama Supreme Court has repeatedly professed its rejection of the concept of no-fault liability (*i.e.*, strict liability) in cases involving defective products. Moreover, there is no indication in any Alabama authority cited by Foster or located by the undersigned's research that Alabama courts authorize strict liability and AEMLD as alternative, viable theories of liability for unreasonably dangerous products. Alabama courts have spoken clearly that the AEMLD hybrid, as opposed to pure strict liability, applies in these types of cases. Tellingly, plaintiff does not cite – and this Court has not found – a single case postdating *Casrell* and *Atkins* in which any court applying Alabama law has ever found that a plaintiff may sustain a strict liability cause of action in the alternative to an AEMLD claim.[3]

---

[3]   If Foster's view of the law were correct, then the AEMLD would have long since melted away into insignificance and irrelevancy in Alabama jurisprudence. If a plaintiff in a products case could go forward on a pure strict liability theory, there would be no reason for any plaintiff to waste time and energy shouldering the more cumbersome, onerous and rigorous AEMLD burden in addition to (or in lieu of) the strict liability claim. Prevailing on a no-fault claim is, by definition, easier than prevailing on a fault-based claim. So the AEMLD would fall into disuse, and would become meaningless. Yet this has not been Alabama's experience. In (Continued)

In clinging to Count II despite the avalanche of authority and logic dictating otherwise, Foster places all of her eggs in the basket of Alabama cases declaring that the AEMLD does not subsume common-law causes of action. This principle is correct, as far as it goes. Specifically, the Alabama Supreme Court "has explained that the AEMLD did not subsume a common-law negligence or wantonness claim." *Weeks*, 2013 WL 135753, at *3.[4] But no Alabama case

---

fact, the AEMLD remains a vibrant and integral feature of Alabama law today in products liability cases. Alabama plaintiffs consistently invoke the AEMLD rather than pure strict liability as their basis for recovery in such cases. Nothing in the Alabama case law would support Foster's view that plaintiffs injured by defective products have the option of choosing an easy layup (strict liability) over a more difficult three-point try (AEMLD).

       The other obvious problem with plaintiff's argument is that, as she frames the Amended Complaint, "[t]his is an action for damages brought pursuant to the Alabama Wrongful Death Statute." (Doc. 66, ¶ 11.) No-fault liability has and can have no application in Alabama wrongful death cases. As the Eleventh Circuit observed some time ago, under Alabama law, "[w]ere a defendant to be found liable for wrongful death under a theory of strict liability, … the plaintiff could not be awarded money damages because he would not have proved that the defendant was culpable," and Alabama's wrongful death statute requires plaintiff's damages to be rooted in defendant's culpability. *Gober v. United States*, 778 F.2d 1552, 1557 n.11 (11th Cir. 1986). So if Foster were correct, she could prevail on a strict liability claim against BATO, yet recover absolutely nothing because she had failed to prove culpability. Such an outcome would make no sense; indeed, the avoidance of that doctrinal disconnect appears to be part of the rationale animating the unconventional structure of the AEMLD. *See Atkins*, 335 So.2d at 144 ("Admittedly, if the retailer here were a party to the instant suit and if the Restatement's pure no-fault concept were applied, the exclusively punitive purpose of our wrongful death statute would indeed be frustrating. Not so, however, under the retention of culpability causally related in fact between the conduct of the defendant and the defective condition of the product."). If plaintiff were to proceed on a purely strict-liability theory against BATO for Mr. Foster's wrongful death, that would invite the incongruous and improper result that Foster could prevail without showing culpability or fault on BATO's part, even though the Alabama Wrongful Death Act allows no recovery in such circumstances.

    [4]    *See also Spain v. Brown & Williamson Tobacco Corp.*, 872 So.2d 101, 106 (Ala. 2003) ("We cannot deduce from this Court's announcement of the AEMLD … that the common law was thereby abrogated by negative inference. … Spain's negligence and wantonness claims are, at this stage of the proceedings, viable alternatives to his AEMLD claim."); *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 35 (Ala. 2003) ("We will not presume to so define the boundaries of the judicially created AEMLD so that it subsumes the common-law tort actions of negligence and wantonness against the retailer defendants."); *Tuscumbia City School System v. Pharmacia Corp.*, 871 F. Supp.2d 1241, 1249 (N.D. Ala. 2012) (observing that "[m]ore recent decisions of the Alabama Supreme Court have clearly stated that AEMLD is a stand-alone tort, (Continued)

appears to have held that the AEMLD does not subsume a strict liability claim.  Indeed, such a holding would be nonsensical, for the simple reason that the AEMLD is Alabama's (modified) version of strict liability in the products liability context.  Nor is Foster's cause aided by the Alabama Supreme Court's observation that "Alabama remains a common-law state, and therefore common-law tort actions … shall continue in force" unless and until they are repealed by the legislature.  *Tillman v. R.J. Reynolds Tobacco Co.*, 871 So.2d 28, 34 (Ala. 2003) (citation and internal quotation marks omitted).  Plaintiff does not explain and cites no authority for the dubious proposition that strict liability is an Alabama "common-law tort action" akin to negligence and wantonness.  If there was never an Alabama common-law tort action for strict liability in defective products cases (and plaintiff has not shown that there was), then the AEMLD could not have had the effect of improperly repealing or subsuming such an action.  *See generally Casrell*, 335 So.2d at 133 (categorically stating that, by creating the AEMLD, "we are not invading the province of the Legislature," because "[d]eveloping cases law is a proper role for this court, and that is what we are doing in this case").

        Foster's last two arguments against entry of summary judgment on Count II may be dispatched quickly.  First, the Court cannot accept plaintiff's position that Alabama decisional authority such as *Tillman* "create[s] issues of fact concerning the viability of any common law claims brought against both defendants in this case."  (Doc. 144, at 6.)  Whether Alabama recognizes a strict liability cause of action in the products liability context is a textbook example of a purely legal question, not hinging on any controverted facts.  Plaintiff cannot avoid Rule 56 by saying that *Tillman* creates genuine issues of material fact here.  It does not.  Second, Foster invokes Rule 8(a) for the proposition that claims may "be pled in an alternative or inconsistent basis."  (Doc. 144, at 6.)  Of course they may, but only if those claims actually exist under applicable law.  Foster's strict liability claim fails not because she has pleaded it in the alternative to her AEMLD claim, but because Alabama law does not recognize a strict products liability claim that is separate and distinct from the AEMLD.

---

*separate from* the common-law action for negligence" and that "[p]laintiffs often assert both AEMLD claims and traditional common-law tort claims in the same actions").

**III.     Conclusion.**

For all of the foregoing reasons, the Court concludes as a matter of law that Count II is not cognizable under Alabama law. Accordingly, the Motion for Partial Summary Judgment (doc. 133) filed by defendant Bridgestone Americas Tire Operations, LLC, is **granted**, and Count II of the Amended Complaint (captioned "Strict Liability Against Defendant Firestone") is **dismissed with prejudice**. Plaintiff's claims against this defendant will proceed to trial with respect to Counts I and III.

DONE and ORDERED this 8th day of February, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE