**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

|  |  |  |
|---|---|---|
| **DEBORAH B. FOSTER, as Personal** | ) | |
| **Representative and Administrator of** | ) | |
| **the Estate of LARRY FOSTER, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 11-0175-WS-N** |
| | ) | |
| **BRIDGESTONE AMERICAS TIRE** | ) | |
| **OPERATIONS, LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter comes before the Court on the Mazda defendants' Motion for Summary Judgment (doc. 135), as well as a trio of ancillary motions, to-wit: the Mazda defendants' Motion to Preclude Certain Testimony of Plaintiff's Expert (doc. 138), Plaintiff's Motion to Strike Defendant's Summary Judgment Affidavit and Reply Brief (doc. 149), and the Mazda defendants' Motion to Strike Plaintiff's Notice of Filing Supplemental Authority (doc. 156).  All of these motions are now ripe for disposition.

**I.     Nature of the Case**.

On the afternoon of June 19, 2009, Larry Foster was driving his 2000 Mazda B4000 truck (equipped with Firestone Wilderness AT tires) southbound on Interstate 65 in Escambia County, Alabama.  At that time, the tire mounted in the rear driver's side position experienced sudden and catastrophic failure, causing Foster to lose control of the truck.  The vehicle traveled across the median, rolled over several times, and came to rest in the northbound lanes.  Foster died from injuries received in the wreck.

Plaintiff, Deborah B. Foster, in her capacity as Personal Representative and Administrator of Foster's Estate, filed this wrongful death action in federal court against a host of defendants, including Bridgestone Americas, Inc. ("BAI"), Bridgestone Americas Tire Operations, LLC ("BATO"), Mazda Motor Corporation, Mazda Motor of America, Inc., and

Ford Motor Company.  (The last three are represented by the same counsel and will be collectively referred to herein as the "Mazda Defendants.")  Ms. Foster interposed exclusively state-law claims against all defendants for negligence/wantonness, strict liability, and violation of the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD").[1]  By separate orders entered on February 5, 2013 and February 8, 2013, the undersigned dismissed all of plaintiff's claims against defendant BAI (*see* doc. 153) and plaintiff's strict liability claim against defendant BATO (*see* doc. 154).  At present, then, BAI is no longer an active defendant in the case, but plaintiff is set to proceed to trial against BATO on claims of negligence/wantonness and AEMLD.

In their Motion for Summary Judgment, the Mazda Defendants seek dismissal of plaintiff's causes of action against them on various grounds.  In response, Ms. Foster voluntarily withdraws the bulk of those claims, writing as follows:  "Respectfully, the Plaintiff gives notice that with regard to claims of manufacturing and/or design defect regarding the subject vehicle, the Plaintiff withdraws any strict liability, negligence/wantonness and/or AEMLD claims asserted against Mazda and Ford."  (Doc. 145, at 4 n.1.)  In light of plaintiff's concession and pursuant to Rule 41(a)(2), Fed.R.Civ.P., all of those referenced claims (including the entirety of Counts V and VI of the Amended Complaint, and that portion of Count IV relating to alleged manufacturing or design defects in the subject vehicle) are **dismissed**.[2]  The Mazda Defendants' Motion for Summary Judgment is **moot** insofar as movants seek Rule 56 relief on those claims.

---

[1]     Despite the absence of any federal question, Ms. Foster properly invoked federal subject-matter jurisdiction pursuant to 28 U.S.C. § 1332, inasmuch as her pleadings allege that there is complete diversity of citizenship and that the amount in controversy well exceeds the sum of $75,000, exclusive of interest and costs.

[2]     As pleaded in the Amended Complaint, the negligence/wantonness cause of action against the Mazda Defendants focuses on their identification and selection of replacement tires, their failure to warn consumers of hazards attendant to Wilderness AT tires, and their handling of the recall / replacement programs.  Those portions of Count IV have not been withdrawn or voluntarily dismissed, but remain in play.  Elsewhere in Count IV, however, plaintiff alleged that the Mazda Defendants "jointly undertook a duty to design, manufacture, distribute and/or sell the Subject Vehicle in a reasonably safe condition;" that the Mazda Defendants "knew or should have known that the Mazda B4000 vehicle was unstable, unsafe and not crashworthy even with proper tires;" and so on.  (Doc. 66, ¶¶ 47, 57.)  The allegations of Count IV relating to alleged defects in the manufacture and design of the Mazda B4000 pickup truck have been withdrawn and are dismissed.

What remains is that part of plaintiff's negligence/wantonness claim pertaining to the Mazda Defendants' "actions in handling the recall of the Wilderness AT." (Doc. 145, at 5 n.1.) Accordingly, this Order will examine and adjudicate the Mazda Defendants' summary judgment motion solely as it relates to that piece of Count IV.

## II.  Evidentiary Disputes.

Before turning its gaze to the merits of the Motion for Summary Judgment, the Court must resolve a series of three purported evidentiary disputes among the parties so that the scope and contours of the record may properly be defined.

### A.  The Expert Testimony of Troy Cottles.

First, the Mazda Defendants have filed a Motion to Preclude Certain Testimony of Plaintiff's Expert, Troy Cottles (doc. 138). The Motion indicates that the Mazda Defendants do not seek wholesale exclusion of Cottles' testimony, but request only that his testimony "regarding any tire replacement program of the defendants" be barred pursuant to Rule 702, Fed.R.Evid., because he lacks expert qualifications on that subject. (Doc. 138, at 1.)[3]

In fashioning their Motion, however, the Mazda Defendants overlook the fundamental fact that Cottles has disclaimed any intent to offer expert opinions as to the adequacy of the subject tire recall program. When defense counsel asked him, "Are you going to be offering any opinions in this case regarding the sufficiency or adequacy of any tire recall or replacement program?" Cottles responded, "No. I don't think I have been asked to do that." (Cottles Dep., at 312.) Plaintiff's response to the Motion reinforces this point, as follows: "Plaintiff will not offer testimony from Cottles in the area of the implementation and sufficiency of tire recalls performed by the Defendants with regard to the subject tire." (Doc. 142, at 2.) The upshot is that the Mazda Defendants are asking this Court to preclude Cottles from offering expert opinions that he has not been retained to provide and that plaintiff will not elicit from him at

---

[3]       Defendants' Motion is correct, as far as it goes. During Cottles' deposition, defense counsel questioned him at length about his qualifications. Cottles admitted that he has no training in assessing the adequacy of product recalls and replacement programs, and denied having ever held himself out as an expert on the subject of the adequacy or sufficiency of tire recall or replacement programs. (Cottles Dep. (doc. 138, Exh. B), at 323, 327.)

trial.  The Motion to Preclude Testimony (doc. 138) needlessly invokes the spectre of a non-issue, and is therefore **moot**.[4]

        **B.**        ***The Affidavit of Sharon Kaplan.***

Second, plaintiff has filed a Motion to Strike Defendant's Summary Judgment Affidavit (doc. 149).  In their reply brief in support of their summary judgment motion, the Mazda Defendants submitted and relied on the Affidavit of Sharon Kaplan (doc. 147, Exh. 7).  That exhibit identifies Kaplan as a Mazda Regulatory Compliance Specialist (a position she has held for one year), and explains that she has "reviewed the materials related to Mazda's SSP 53, which was a tire replacement program relating to Firestone Wildness [*sic*] AT tires," even though said program occurred from 2001 to 2004, many years before Kaplan was assigned her current job duties.  (Kaplan Aff., at 1.)  As part of that process, Kaplan indicates, she has "reviewed the materials from R.L. Polk," a third-party vendor that sent SSP 53 notices to owners of affected vehicles.  (*Id.*)  According to Kaplan, her review shows that a pair of SSP 53 notices was mailed to Garry Foster at addresses in Windsor, Connecticut, and Suffield, Connecticut in approximately August 2001 and 2004.  (*Id.* at 1-2.)  Kaplan also states that "Mr. Foster would have received notice of SSP 53 if he brought the vehicle to a Mazda dealership between August 2001 and September 2004."  (*Id.* at 2.)  The materials that Kaplan reviewed are not appended to her affidavit as exhibits, nor is there any indication whether those materials are available in a properly authenticated, admissible form.

Plaintiff objects to the Kaplan Affidavit on several grounds.  To resolve this issue, the Court need look no further than Rule 56 itself, which requires that a summary judgment affidavit "used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Rule 56(c)(4), Fed.R.Civ.P.  Kaplan's Affidavit flunks this threshold test.  In particular, Kaplan purports to aver that Mazda sent notices of its SSP 53 tire replacement program to Garry Foster at specific addresses in Connecticut in August 2001 and again in 2004.

---

[4]      Cottles' expert report begins with this statement, "I am by training and experience a tire failure analysis and tire design expert."  (Doc. 138, Exh. A, at 2.)  Plaintiff explains that she intends to offer Cottles' testimony at trial only in the forensic tire analysis field, which he holds out as his core area of expertise and to which the Mazda Defendants have posited no objection.  (Doc. 142, at 2.)

From the face of the Affidavit, however, it is plain that the affiant has no personal knowledge of those facts. She was not Mazda's Regulatory Compliance Specialist at those times, and did not personally send (or oversee the transmission of) SSP 53 notices to Garry Foster or anyone else. Instead, Kaplan is merely repeating what she has read in unspecified, undisclosed materials that are apparently in the custody of a third party. Parroting back what a witness has heard someone else say (or what she has read in a third party's documents) and offering that statement for its truth is the very epitome of hearsay. Of course, the law is clear that "[t]he general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293 (11th Cir. 2012) (citation omitted). A caveat to this general rule is that a hearsay statement may be considered on summary judgment "if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Id.* at 1293-94 (citation omitted). The trouble is that, on this record, the Court has no evidence and no reason to believe that Kaplan's testimony about what she read in a third-party vendor's unidentified "materials" is capable of being reduced to admissible form. Certainly, the Mazda Defendants do not so argue. And the "materials" themselves have not been filed with the Clerk of Court (and, for aught the record shows, may or may not have been produced to plaintiff's counsel during discovery). Absent some indication that duly authenticated copies of those records are available and admissible in this case, the Court cannot and will not accept a Mazda employee's representation in a summary judgment affidavit about what those materials say.[5]

---

[5]     In arguing that Kaplan's averments are admissible, the Mazda Defendants insist that her statements "are factual statements based on a review of materials by a person who is qualified to discuss such matters." (Doc. 150, at 6.) This contention misses the point. The issue is not whether Kaplan is or is not generally familiar with Mazda's tire replacement programs, or whether she is or is not generally authorized to speak for Mazda about those programs. The issue is the "personal knowledge" requirement of Rule 56(c)(4). All Kaplan knows about the SSP 53 notices ostensibly sent to Garry Foster is what she has read in unspecified "materials" belonging to a company called R.L. Polk. She has no personal knowledge about what R.L. Polk did or did not do. She would not appear to be able to vouch for the authenticity of those materials. All the affiant is doing is repeating what she read in R.L. Polk's documents. The Mazda Defendants concede that an affidavit is properly stricken where it contains "statements relaying the substance of statements made by third-parties." (Doc. 150, at 6 n.3.) That is exactly what the Kaplan Affidavit does in reciting what she read in the materials of R.L. Polk. Without the "materials" themselves, much less some assurance that those documents are capable of being presented at trial in admissible form, Rule 56(c)(4) and the line of authorities including the Eleventh Circuit's recent decision in *Jones* forbid this Court from considering Kaplan's account (Continued)

-5-

Similarly problematic are Kaplan's averments that Garry Foster "would have received notice of SSP 53 if he brought the vehicle to a Mazda dealership between August 2001 and September 2004," and that "the tires would have been replaced" at that time. (Kaplan Aff., at 2.) Again, Kaplan does not profess to have personal knowledge of Garry Foster's circumstances or how SSP 53 was implemented at particular dealerships in Connecticut. Instead, she appears to be speculating, based on a factual predicate that she does not identify (assuming it exists at all). Speculative affidavits setting forth conclusory allegations without specific supporting facts are not properly considered on summary judgment.[6]  Neither Kaplan nor Mazda explains how Kaplan (who has been on the job for one year) can possibly testify based on personal knowledge what a Connecticut Mazda dealership would have done in a particular instance between 2001 and 2004 when a B4000 truck was brought in for service. No specific facts are provided to support her conclusory statement on this point that might remove it from the realm of rank, self-serving speculation.[7]

---

of what she read in third-party records when such account is offered for the truth of statements contained in those records.

[6]    *See, e.g., Pace v. Capobianco*, 283 F.3d 1275, 1279 (11th Cir. 2002) ("a statement that the affiant believes something is not in accordance with" Rule 56(c)(4)'s personal knowledge requirement); *Poitevint v. United Recovery Systems, LP*, --- F. Supp.2d ----, 2012 WL 4458289, *4 (N.D. Fla. Sept. 26, 2012) (striking speculative portions of witness affidavit on summary judgment); *Ross v. Cecil County Dep't of Social Services*, 878 F. Supp.2d 606, 615 n.10 (D. Md. 2012) ("hearsay, conclusionary, and speculative statements that lack an evidentiary basis will not support or defeat a motion for summary judgment"); *Trimble v. Alliance-DeKalb/Rock-Tenn. Co.*, 801 F. Supp.2d 764, 769 (N.D. Ill. 2011) (in summary judgment affidavit, "although personal knowledge may include reasonable inferences, those inferences must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."); *Woods v. Paradis*, 380 F. Supp.2d 1316, 1324 (S.D. Fla. 2005) ("An affidavit has no probative value and must be stricken when it contains conclusions rather than statements of fact.").

[7]    Besides, limiting notice of SSP 53 to customers who took their cars to a Mazda dealership for service would be facially inadequate. Common experience teaches that a considerable fraction of car owners (including Garry Foster, who owned the subject vehicle during the relevant time period) elect not to have their vehicles serviced at a dealership or at any outlet affiliated with the manufacturer. If notice is given only when an eligible owner brings a car in for service at the dealership, then a large percentage of owners will not receive notice.

For all of these reasons, plaintiff's Motion to Strike Defendant's Summary Judgment Affidavit (doc. 149) is **granted** as to the third, fourth and fifth paragraphs of the Kaplan Affidavit.  Those portions of defendants' Exhibit 7 are **stricken** for non-compliance with Rule 56(c)(4) of the Federal Rules of Civil Procedure.

      **C.**      ***The Purported "Supplemental Authority."***

Third, defendant Ford Motor Company (one of the Mazda Defendants) has filed a Motion to Strike Plaintiff's Notice of Filing Supplemental Authority (doc. 156).  The court-ordered briefing schedule on the Mazda Defendants' Motion for Summary Judgment provided that all briefing would be concluded (and the Motion would be taken under submission) as of January 16, 2013.  More than two months later, on March 20, 2013, plaintiff unilaterally and without leave of court filed a Notice of Filing Supplemental Authority (doc. 155).  Contrary to its name, that "supplemental authority" consisted not of a newly issued legal precedent, but of more than 60 pages of transcripts of a Ford executive's June 2001 testimony in a Congressional hearing. Plaintiff provided no accompanying memorandum with this exhibit to explain either its significance or plaintiff's reasons for not submitting it timely whilst summary judgment briefing was underway; rather, plaintiff simply dumps this document into the record with nothing more than a threadbare notation that the "pertinent pages" are pages 21-27, 29, 31-39, 42-45, and 59-60.  Ford now objects to plaintiff's Notice of Filing Supplemental Authority.

The defects attendant to plaintiff's supplemental filing are both substantial and insurmountable.  For starters, the Notice of Filing Supplemental Authority shrugs off the deadlines established in the applicable briefing schedule, and fails to offer anything approaching good cause for plaintiff's failure to submit this 11-year old transcript in a timely fashion.  *See generally* Rule 6(b), Fed.R.Civ.P. (describing showing that must be made for relief from court-ordered deadlines).  The "supplemental authority" is not authority at all, but a factual exhibit that has been publicly available for more than a decade.  Moreover, plaintiff did not request (and has made no showing that would warrant) leave of court to include this additional exhibit in the summary judgment record.  The Federal Rules of Civil Procedure do not confer upon a litigant the unilateral, absolute right to reopen a briefing schedule and summary judgment record at its leisure to inject previously available materials that the litigant decides on further reflection it

wants to include.[8]  Finally, even if the Court did allow this untimely, unexplained supplementation of the record, plaintiff has provided no explanatory verbiage linking the 60+ pages of transcripts of 2001 Congressional hearings to the specific arguments plaintiff has made in her summary judgment briefs.  *See generally* Rule 56(c)(1), Fed.R.Civ.P. (party asserting facts on summary judgment must support assertion by "citing to particular parts of materials in the record," not simply pointing at a large, undifferentiated collection of pages).  This Court will neither guess at what plaintiff is trying to say nor develop possible arguments for her.[9]  Such concerns loom particularly large here, given that the subject testimony focused on the Ford Explorer (a sport utility vehicle), rather than Mazda pickup trucks (the type of vehicle that plaintiff's decedent was driving), and do not appear to relate to the SSP 53 program that plaintiff frames as the centerpiece of Count IV.  (Doc. 155, Exh. A, at 23 ("Let me talk about the Explorer, and let's get to the heart of the issue.  The Ford Explorer is and always has been a safe vehicle.").)

     For these reasons, the Motion to Strike Notice of Supplemental Authority (doc. 156) is **granted**, and plaintiff's Notice of Filing Supplemental Authority (doc. 155) is **stricken**.[10]

---

[8]    The practical problems and delays caused by such untimely submissions are self-evident.  If the Court were to allow plaintiff to supplement the record with this exhibit two months after summary judgment briefing closed, then it would likely become necessary to re-open the briefing to provide the parties with reasonable opportunities to be heard as to the implications of this exhibit.  The result would be needless squandering of litigant and judicial resources via multiple rounds of briefing, and delayed adjudication of the underlying motion.

[9]    *See, e.g., Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("district courts cannot concoct or resurrect arguments neither made nor advanced by the parties"); *In re Brannan*, 2013 WL 838240, *3 n.7 (S.D. Ala. Mar. 5, 2013) ("Of course, district courts generally cannot and do not develop arguments that a litigant has not.").

[10]    On April 1, 2013, some 11 days after the Motion to Strike was filed, plaintiff submitted a Response (doc. 168) that for the first time offers explanations of (i) why plaintiff did not file this exhibit sooner and (ii) how plaintiff contends the exhibit helps her.  This showing is far too little, far too late.  Plaintiff's rationale that her counsel has possessed this exhibit for many years, but failed to appreciate its significance until now, does not justify reopening the summary judgment record or inviting a brand-new round of briefing months after the fact.  Even if the exhibit were allowed now, the outcome of the summary judgment analysis would be unchanged.  The two pages from this more than 60 page exhibit that plaintiff now (for the first time) specifies as relevant are ambiguous and unclear, at best, and do not support an inference that Mazda and Ford were joint venturers or in an agency relationship (as plaintiff has argued as (Continued)

III.   **Relevant Facts.**[11]

Having thus clarified and delineated the scope of the factual record on summary judgment, the Court now examines the relevant facts that pertain to the Mazda Defendants' Rule 56 Motion.[12]

   *A.   The Subject Vehicle, Tires and Accident.*

The decedent's brother, Garry Foster, purchased a new Mazda B4000 pickup truck from a Mazda dealership (nonparty Tony March Mazda) in Connecticut in or about August 2000.  (G.

---

her sole bases for opposing Ford's Rule 56 Motion) with respect to the SSP 53 tire replacement program.  Nor does this exhibit raise an inference of negligence or wantonness by Ford with respect to notice given to Mazda owners in connection with Mazda's SSP 53 program.  In short, the "supplemental authority" is untimely, plaintiff has not shown good cause for the delay, and the exhibit itself would not make a difference in the analysis even if it were accepted now.

[11]     The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party, and to decide any conflicts between the facts evidenced by the parties by crediting the nonmoving party's version.  *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).  Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor.

[12]     Judicial review in this case has been hampered by both sides' minimalistic, cursory treatment of the facts in their summary judgment briefs, in derogation of Local Rule 7.2(a) & (b).  Such review has further been impeded by the parties' failure to adhere to the prescription of the Local Rules that "[i]f discovery materials are germane to any motion or response, ***only the relevant portions of the material shall be filed*** with the motion or response." LR 5.5(c) (emphasis added).  A consequence of this oversight is that the record includes literally hundreds of pages of exhibits to which no party refers and which appear entirely extraneous to the specific legal and factual issues being litigated on summary judgment.  This Court will not undertake the arduous, time-consuming and unnecessary task of sifting through uncited materials in hopes of unearthing factual nuggets that might prove helpful to one side or the other.  *See* Rule 56(c)(3), Fed.R.Civ.P. (on summary judgment, "[t]he court need consider only the cited materials").  To illustrate the point, plaintiff purports to rely on Exhibit 4, which is 86 pages long, without a single pinpoint citation.  Instead, plaintiff simply states with a wave of the hand that this exhibit "restates what was transpiring at the time of the recall and noted a number of issues."  (Doc. 145, at 9.)  On this showing, the Court cannot ascertain how, exactly, plaintiff contends Exhibit 4 aids her cause; moreover, the Court exercises its discretion under Rule 56(c)(3) by declining to spend hours poring over that 86-page document in an effort *sua sponte* to connect dots that plaintiff has neglected to draw.  The same is true of various other exhibits lodged in the record by both sides, without pinpoint citations or meaningful discussion of particular portions on which the litigant's position rests.

Foster Dep., at 28-30.)  Within six months, Garry Foster received a recall notice in the mail, although he does not recall whether it originated from Mazda or from Firestone.  (*Id.* at 27-28, 30.)  The notice related specifically to tires.  (*Id.* at 32.)  Within three months after he received the recall notice, Garry Foster brought the vehicle back to the Mazda dealership, where all four tires were replaced.  (*Id.* at 26, 28-30.)  The new tires were Firestone Wilderness AT tires, just as the original tires were.  (*Id.* at 28, 165.)  Foster's best estimate is that the tire change occurred in the timeframe of December 2000 to January 2001.  (*Id.* at 33-35.)  After the new tires were placed on the truck, he drove it approximately 55,000 to 60,000 miles without any punctures, problems, maintenance issues, or repairs to the tires.  (*Id.* at 47-49.)  Garry Foster does not recall ever receiving any recall notices pertaining to tires on the Mazda B4000 truck after the initial notice he received in late 2000 (and upon which he acted in a timely manner).  (*Id.* at 109-10, 163.)[13]

Garry Foster sold the Mazda B4000 truck to his twin brother, Larry Foster, in June 2008 for the sum of $6,000.  (*Id.* at 9-12.)  Two weeks before the sale, Garry Foster brought the truck to a local tire shop for an inspection, and was informed that the tires were fine and did not need to be replaced.  (*Id.* at 62-66.)[14]  Garry Foster never again replaced the tires following the recall and subsequent tire-replacement at the Mazda dealership in 2000-2001; thus, the vehicle remained equipped with Firestone Wilderness AT tires that Mazda had placed on it in December 2000 / January 2001, through the time of the wreck that gives rise to this lawsuit.

---

[13]       The testimony on this point is as follows:

"Q:     Okay.  And do you recall if you ever got any other notices, or was that the only one?
"A:     That's the only one that I know of."

(G. Foster Dep., at 163.)

[14]       According to Garry Foster, the truck was in excellent condition at the time he sold it to his brother, as he testified as follows:  "There was no concerns at that time.  As far as I know, the truck was perfect.  Good running condition.  Everything else was fine. … I only had the tires checked out because they had been on for so long …."  (*Id.* at 167.)  As for the tires, Garry Foster felt there was no concern because the tire shop "gave [him] the green light that the tires were okay," and he "had no reason to think otherwise … because as far as looks, they looked perfectly fine."  (*Id.* at 168.)

As discussed *supra*, Larry Foster was killed in a single-vehicle accident while driving the subject Mazda B4000 pickup truck on Interstate 65 in Escambia County, Alabama, on June 19, 2009. Both plaintiff and the Mazda Defendants are in agreement that the accident occurred because of a "detreading" (or tread/belt detachment) of the rear driver's side tire. (Doc. 135, Exh. 1, ¶¶ 1-2; doc. 145, at 2.) The parties likewise agree that the failed tire was one of the Firestone Wilderness AT tires placed on the vehicle at a Mazda dealership in or around late 2000 or early 2001. (Doc. 135, Ex. 1, ¶ 3; doc. 145, at 2.)[15] As a result of the detreading, Larry Foster lost control of the truck, which rolled three to four times before landing upside down in the roadway on the other side of the median. (Arndt Dep., at 56.)

**B.     The Recall / Replacement Programs and Notification(s).**

Plaintiff's summary judgment filings leave no doubt that the only claims she now pursues against the Mazda Defendants are negligence/wantonness claims "regarding the actions taken by the [Mazda] Defendants to recall the subject Wilderness AT tire from service." (Doc. 145, at 4 n.1.) Accordingly, it is necessary to examine the facts concerning the recall / replacement programs to evaluate the Mazda Defendants' Rule 56 Motion.

Plaintiff's evidence shows that Ford approached BATO (the sole remaining Firestone defendant) with concerns over Wilderness AT model tires by no later than the summer of 2000. (Quieser Dep. (doc. 145-1), at 34.) The National Highway Traffic Safety Administration (NHTSA, an agency in the U.S. Department of Transportation) commenced an investigation into purported defects in Wilderness AT tires in May 2000. (*Id.* at 52.) On August 9, 2000, Firestone initiated a recall program for certain Wilderness AT tires, working directly with Ford to notify customers of the recall. (*Id.* at 54-55.) The reason for that recall was that Firestone had become aware of a growing volume of complaints concerning Wilderness AT tires, including belt separations that led to vehicle crashes and injuries, such that "the only solution that we saw was to just remove the tires from the field and figure it out." (*Id.* at 59-60.)

Both Ford and Mazda took further action in 2001. Indeed, the Mazda Defendants' evidence confirms that in August 2001 Mazda prepared a letter for all B-series vehicles from 1994-2001 (which would include the B4000 truck at issue in this case), stating as follows:

---

[15]     Record evidence confirms that the failed tire was marked as a Firestone Wilderness AT tire, size P265/75R15. (Doc. 135-6, at 17.)

"Mazda Motor Corporation has decided to replace all Firestone Wilderness AT tires (15-inch and 16-inch) on certain Mazda vehicles as a precautionary measure aimed at preventing potential tire failures from occurring in the future." (Doc. 135, Exh. 5, at 1.)  Mazda's letter explained that this program – which was known as SSP 53 – was more expansive than Firestone's summer 2000 recall because that recall was intended "to replace **certain** 15-inch Wilderness AT … tires due to elevated failure rates," whereas Mazda "is voluntarily replacing all 15-inch and 16-inch Firestone Wilderness AT tires on all Mazda vehicles as a preventive measure to ensure confidence in your Mazda vehicle." (*Id.* (emphasis in original).)[16]  This announcement came on the heels of a similar Ford initiative in May 2001, pursuant to which Ford announced plans to replace all Wilderness AT tires on its vehicles because of field data showing elevated failure rates for those tires.  (Quieser Dep., at 105-06.)  Ford's assessment was that laboratory and vehicle testing "shows that tire design and variations in physical characteristics of non-recalled Wilderness AT tires make them less durable than comparable tires from other manufacturers." (*Id.* at 108.)[17]  A renotification program was initiated by NHTSA in 2006 for the stated purpose of getting "any straggling tires that are out in the field, to get them out of service." (*Id.* at 115.)

Plaintiff also identifies record evidence that, in her view, establishes a nexus between Ford's recall of Wilderness AT tires on its vehicles and Mazda's SSP 53 replacement program for Wilderness AT tires on its vehicles.  Internal e-mails dated May 2001 show that Mazda "arranged to pass our claims through Ford to Firestone so that there was a single negotiation point with the Tire manufacturer," and that "Ford will cover Mazda cost" of "the Firestone tire issue." (Doc. 146-2.)  Other record documents show that Mazda consulted with Ford service

---

[16]      The August 2001 form notification letter also stated that "[o]ur records indicate that your vehicle may have Firestone Wilderness AT tires as either original equipment or replacement tires," that "[t]his program will expire on May 31, 2006," and that "[y]our Mazda dealer will replace any Wilderness AT tires (15-inch and 16-inch), including the spare tire *not* marked for temporary use, **free of charge** regardless of tire wear or damage, and whether tires are original equipment or replacement tires." (*Id.*)

[17]      In May 2001 correspondence with the NHTSA, Ford elaborated on its reasons for the recall by stating that, based on its analysis, "we have sufficient questions about the durability of the Wilderness AT tires that we cannot say with certainty these tires, over time, will provide a safe level of performance for our customers. … We will replace all Wilderness AT tires to avoid confusion among our customers and to eliminate doubt they may have about their tires.  We will manage the replacement program very aggressively …." (Doc. 145, Exh. 3, at 14.)

managers concerning the warranty process for the Wilderness AT program.  (Doc. 146-1.)  And in correspondence to its dealers dated May 22, 2001 concerning the replacement of Wilderness AT tires on B-series Mazda trucks, Mazda North American Operations wrote that "Mazda is working with Ford on this issue."  (Doc. 146-3.)

**IV.    Summary Judgment Standard.**

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), Fed.R.Civ.P.  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact.  *Id.*  "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment."  *Id.*  (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted).  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). "Summary judgment is justified only for those cases devoid of any need for factual determinations."  *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

**V.    Analysis.**

**A.    Relevant Legal Principles for Negligence Cause of Action.**

The parties' summary judgment filings devote little attention to the legal standards governing plaintiff's negligence / wantonness cause of action.  That said, it is hornbook law that "[i]n any negligence case, the plaintiff bears the burden of proving the existence of a duty owed by the defendant, a breach of that duty, causation, and damage."  *DGB, LLC v. Hinds*, 55 So.3d 218, 234-35 (Ala. 2010) (citation omitted); *see also Martin v. Hodges Chapel, LLC*, 89 So.3d 756, 762-63 (Ala.Civ.App. 2011) ("To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or

injury.") (citation omitted).  Moreover, Alabama courts have opined that "summary judgment is rarely appropriate in a negligence action."  *Miller v. Cleckler*, 51 So.3d 379, 383 (Ala.Civ.App. 2010) (citation omitted); *see also McGinnis v. Jim Walter Homes, Inc.*, 800 So.2d 140 (Ala. 2001) ("Summary judgments are rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised.") (citation and internal marks omitted).[18]

In their reply, the Mazda Defendants argue for the first time that they are entitled to summary judgment on Count IV because plaintiffs in the "negligent recall" context "generally have used expert testimony to establish negligence," yet Ms. Foster has identified no expert opinion challenging the adequacy of the Mazda Defendants' tire recall / replacement efforts. (Doc. 147, at 3.)  This contention fails on multiple grounds.  As an initial matter, federal courts generally do not consider new arguments raised for the first time in reply briefs.  *See, e.g., Continental Motors, Inc. v. Jewell Aircraft, Inc.*, 882 F. Supp.2d 1296, 1314 n.26 (S.D. Ala. 2012) ("This is a new, previously available argument which a movant cannot properly raise for the first time in a reply brief."); *Apex/FCC, LLC v. FlexiCrew Staffing, Inc.*, 2012 WL 5398803, *4 (S.D. Ala. Nov. 1, 2012) ("as a new argument raised for the first time in a reply brief, it is improper").[19]  Next, the Mazda Defendants do not assert that expert testimony is mandatory in

---

[18]     Two observations are germane here.  First, the Court focuses on the negligence claim of Count IV, rather than the wantonness / recklessness prong of that cause of action, for the simple reason that the summary judgment movants have not distinguished between these categories of claims, and have advanced no arguments that they would be entitled to Rule 56 relief on the wantonness / recklessness theories even if the negligence claim survives.  Because movants have treated the distinct legal theories of Count IV as a unitary whole, the Court will not undertake to analyze the wantonness / recklessness aspect of Count IV separately herein, but will instead address only the negligence claim, on the premise that the Mazda Defendants' Motion for Summary Judgment on Count IV stands or falls with the negligence analysis.  Second, to the extent that the parties do cite case authorities in their summary judgment briefs, their analysis is largely confined to Alabama decisions.  With no suggestion by any party that any other state's law governs Count IV, this Court will apply Alabama law to that claim.

[19]     Any suggestion that the Mazda Defendants did not know that Count IV includes allegations of negligent implementation of the SSP 53 tire replacement program is unavailing. The four corners of the Amended Complaint leave no doubt that Count IV is based, at least in part, on a theory that the Mazda Defendants "negligently failed to make appropriately diligent continuing efforts to reach and warn consumers" to replace their Wilderness AT tires.  (Doc. 66, ¶ 56.)  As such, the Mazda Defendants' decision in their initial brief not to address the quantum (Continued)

such cases, but instead identify a handful of mostly-unpublished district court opinions from other jurisdictions in which plaintiffs purportedly "have used" expert testimony. The mere fact that a plaintiff in Kentucky may have elected to retain an expert to establish a negligent product recall does not imply that Ms. Foster's Count IV fails as a matter of law without such expert testimony.[20]

Furthermore, the Mazda Defendants have cited no Alabama authorities (and the Court's own research has revealed none) deeming expert testimony mandatory in the context of a claim for a negligent product recall. In fact, most Alabama cases speaking to the necessity of expert testimony arise in the medical-malpractice context, and are not analogous to Foster's claims.[21] More generally, courts around the country typically do not require expert testimony to prove negligence, unless specialized knowledge is necessary to evaluate the proper standard of care and a defendant's compliance with same. *Compare Industrial Risk Insurers v. American*

---

and method of proof required for a claim of negligent recall was at their peril, and was made despite notice of the actual nature of plaintiff's claim.

[20] Besides, not all of the cases cited by movants on this point reasonably support it. For example, the Mazda Defendants identify *In re Yamaha Motor Corp. Rhino ATV Products Liability Litigation*, 816 F. Supp.2d 442 (W.D. Ky. 2011), as a case in which plaintiffs used expert testimony to prove up a claim of negligent recall. But nothing in the cited opinion indicates that the plaintiffs were bringing a claim for negligent recall, much less that they intended to prove that claim at trial via expert testimony. Instead, the cited opinion merely addresses *Daubert* issues, under the guiding principle that "[t]he question that juries will be asked in these cases is whether the Yamaha Rhino was defectively designed under the applicable state law." *Id.* at 457. Here, by contrast, the question of defective product design has no bearing on plaintiff's Count IV against the Mazda Defendants, as presently postured. And the *Yamaha* court actually excluded the plaintiffs' expert's opinion about the manufacturer's door-installation program because that expert had "no experience (let alone expertise) in the area of product recalls." *Id.* at 454. Thus, it is far from clear that the *Yamaha* plaintiffs actually did present expert testimony at trial to establish a negligent-recall claim, or that their proof turned on the availability of such expert testimony.

[21] Alabama courts have eschewed the notion that expert testimony is always necessary in products liability cases. *See, e.g., Hughes v. Stryker Sales Corp.*, 2010 WL 1961051, *4 & n.4 (S.D. Ala. May 13, 2010) (collecting Alabama cases and concluding that expert testimony is *not* required to establish a defect under the AEMLD "when a jury could reasonably infer from the product's failure under all the attendant circumstances that its defective condition caused the plaintiff's injury") (citation omitted).

*Engineering Testing, Inc.*, 769 N.W.2d 82, 105 (Wisc. App. 2009) ("Generally, expert testimony is not required for proof of negligence.") (citation omitted) *with Wackenhut Corrections Corp. v. de la Rosa*, 305 S.W.3d 594, 623 (Tex.App.-Corpus Christi 2009) ("Expert testimony is only necessary when the alleged negligence is not within the experience of laymen," such as "when specialized knowledge is necessary to the determination of the issue.") (citations omitted).

For all of these reasons, the Court rejects any suggestion by the Mazda Defendants that Foster's negligence claims pertaining to the tire recall / replacement programs cannot reach a jury without expert testimony concerning the manner in which the SSP 53 tire replacement program was implemented. Specialized knowledge does not appear necessary for a layperson to determine whether the Mazda Defendants were negligent in their efforts to notify B-series vehicle owners of the Wilderness AT tire replacement program and associated safety concerns with those tires; therefore, the Court finds that Count IV is not rendered inadequate as a matter for law by virtue of Ms. Foster's failure to present such expert testimony.

**B.    *Sufficiency of Record Evidence of Negligence by Mazda.***

In her Amended Complaint (doc. 66), plaintiff alleges that Mazda Motor Corporation and Mazda Motor of America, Inc. (collectively, "Mazda") breached a duty of care in the following respects: (i) "by negligently … selecting the Subject Tire, a Firestone Wilderness AT, as a suitable replacement tire for the defective OEM Tires;" (ii) by failing "to warn its dealerships, independent retailers, service stations and consumers, in general, including but not limited to Mr. Foster, of the ongoing hazard created by the Wilderness AT tire;" and (iii) by failing "to make appropriately diligent continuing efforts to reach and warn consumers who did not replace recalled tires on their Mazda vehicles during the initial recall activity." (Doc. 66, ¶¶ 49, 53, 56.) So plaintiff's negligence claims against Mazda are couched in alternative theories of negligent failure to select a proper replacement tire at the time of Firestone's initial recall of Wilderness AT tires (*i.e.*, Mazda's decision to replace Wilderness AT tires with Wilderness AT tires in the summer 2000 Firestone recall), and negligent implementation (particularly with respect to notice) of Mazda's subsequent SSP 53 tire replacement program for all Wilderness AT tires on B-Series Mazda trucks for model years 1994 to 2001.

The part of Count IV alleging that Mazda negligently selected the Wilderness AT replacement tires that it placed on Garry Foster's B4000 pickup truck in late 2000 or early 2001 may be dispatched quickly. On summary judgment, plaintiff concedes that "Mazda and Ford

may not have known of the defective nature of the Wilderness AT tire at the time the tires were placed on the vehicle in late 2000 or early 2001." (Doc. 145, at 9.) Furthermore, plaintiff identifies no evidence that Mazda knew or should have known when it replaced the tires on Garry Foster's truck in late 2000 or early 2001 that the replacement Wilderness AT tires it selected were defective, unsafe or inappropriate. There is simply no record evidence from which a reasonable factfinder could conclude that Mazda negligently selected the Wilderness AT as a replacement tire for B4000 series trucks in 2000 when Firestone recalled certain (but not all) Wilderness AT tires. To the extent that Mazda seeks summary judgment on that portion of Count IV, the Rule 56 Motion is due to be, and the same hereby is, **granted**.

As for the negligence claim grounded in the implementation of Mazda's SSP 53 tire replacement program commencing in August 2001, plaintiff's position is that "Ford and Mazda were negligent in calling back those Wilderness AT tires after they became aware of the deficiencies in the Wilderness AT line." (Doc. 145, at 8.) Viewing the record in the light most favorable to Ms. Foster, the Court finds that Mazda was aware of the elevated safety risk posed by the replacement Wilderness AT tires it had placed on Garry Foster's truck by mid-2001. Indeed, Mazda's preparation of an "Owner Notification Letter" in August 2001 announcing its plan under SSP 53 "to replace all Firestone Wilderness AT tires" on B-Series pickup trucks "as a precautionary measure aimed at preventing potential tire failures" supports an inference that Mazda was acutely aware of safety risks with those tires, as documented in the Ford evidence described *supra*. Furthermore, Mazda must have known that Garry Foster's B4000 truck had replacement Wilderness AT tires on it as of August 2001, given that a Mazda dealership had installed those replacement tires on the vehicle in late 2000 or early 2001.

Under the circumstances, it is entirely reasonable to conclude that Mazda owed a duty of care to Garry Foster to take reasonable steps to notify him of SSP 53 and its concerns that his tires were unsafe, and to take appropriate measures to replace the Wilderness AT tires that Mazda had placed on his vehicle. The record in the light most favorable to plaintiff shows that Mazda breached this duty of care. Garry Foster's testimony was that the only recall / replacement notice he received from Firestone or Mazda was within a few months after he purchased the B4000 truck and that he took the vehicle to a Mazda dealership a short time later. This evidence also shows that Mazda replaced the recalled Wilderness AT tires with another set of Wilderness AT tires. Although Mazda later became sufficiently concerned with the failure

-17-

rates of Wilderness AT tires that it launched a replacement program, SSP 53, to replace all such tires on B-Series vehicles, plaintiff's evidence is that Mazda never notified Garry Foster of SSP 53. He never knew that Mazda believed the tires the Mazda dealership had placed on his vehicle in connection with the 2000 Firestone recall were subject to elevated failure rates, or that Mazda was offering to replace such tires free of charge. In sum, the record evidence supports reasonable inferences that (i) Mazda knew Garry Foster had Mazda-placed Wilderness AT tires on his B4000 pickup truck, (ii) Mazda knew or had ready access to Garry Foster's contact information, but (iii) Mazda never notified Garry Foster of the SSP 53 program. In plaintiff's words, then, Mazda was negligent because it "took no concrete steps in this case to follow up on the return of those tires." (Doc. 145, at 10.)

Mazda responds that it is nonetheless entitled to summary judgment on Count IV for several reasons. First, Mazda urges this Court to assess the credibility of Garry Foster's testimony, and to draw inferences from that testimony favoring the summary judgment movant, rather than the nonmovant. This approach would flip the applicable summary judgment standard on its head, and is therefore legally threadbare.[22] Second, Mazda maintains that it is entitled to summary judgment because "the plaintiff has failed to offer any evidence establishing what Mazda did or did not do negligently in the implementation of SSP 53." (Doc. 147, at 3.) In so

---

[22] Specifically, Mazda engages in self-serving speculation that Garry Foster "could well be incorrect regarding the date of his receipt of the notice or combining the two notices in his memory." (Doc. 147, at 2 n.3.) Mazda is welcome to make such an argument to the jury; however, viewed in the light most favorable to plaintiff, Garry Foster's testimony was that he only received one replacement / recall notice, that such notice predated the August 2001 rollout of SSP 53 by several months (and therefore could not have been a SSP 53 notice), and that Mazda used Wilderness AT tires as replacement tires on his vehicle (which it did not do in SSP 53, the stated purpose of which was to get all Wilderness AT tires off the road for Mazda B-Series trucks). Similarly, Mazda attempts to challenge Garry Foster's credibility by asserting that "he does not have a detailed memory" of these events. (*Id.*) A district court deciding a motion for summary judgment movant does not have the luxury of ignoring or molding record facts that it finds inconvenient, nor can it engage in any weighing of testimony or parsing of credibility. *See, e.g., Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices. … This is because credibility determinations and the weighing of evidence are jury functions, not those of a judge.") (citations and internal quotation marks omitted). Such contentions may carry the day at trial, but they are unhelpful at the Rule 56 stage.

arguing, however, Mazda overlooks plaintiff's evidence that Mazda failed to take reasonable steps to contact Garry Foster to notify him of SSP 53, to communicate its concerns over the elevated failure rates of the Wilderness AT tires it had installed on his truck in connection with the earlier Firestone recall, and to apprise him of Mazda's offer to replace those replacement tires at no charge.  Such failings raise an inference of negligence sufficient to withstand summary judgment review.  Third, Mazda objects that plaintiff's negligence claim is legally barred "[b]ecause the plaintiff has failed to offer any expert testimony establishing what actions or inactions of the Mazda defendants were negligent."  (*Id.* at 4.)  As the Court has already found *supra*, there is no legal requirement that Foster prove her negligence claim related to the tire recall / replacement program via expert testimony.  Fourth, Mazda refers to the Kaplan Affidavit as proof that Mazda was not negligent; however, the Court has struck these portions of the Affidavit upon sustaining plaintiff's hearsay and lack of personal knowledge objections.[23]

For all of these reasons, the Court finds that Mazda is not entitled to summary judgment on the portion of Count IV alleging that Mazda was negligent/wanton/reckless in failing to take reasonable steps to notify Garry Foster of the SSP 53 tire replacement program and the known safety risks concerning the Wilderness AT tires Mazda had installed on the truck pursuant to the earlier Firestone recall.

### C.   Sufficiency of Record Evidence of Negligence by Ford.

In Count IV of the Amended Complaint, plaintiff asserts the same negligence / wantonness / recklessness claims against Ford that it does against Mazda.  From the outset, plaintiff's inclusion of Ford Motor Company in this cause of action is curious.  After all, the subject vehicle was a Mazda B4000 pickup truck, not a Ford.  The Firestone Wilderness AT tires on the vehicle at the time of the accident had been installed by a Mazda dealership, not a Ford dealership.  And SSP 53 was a Mazda tire replacement program, not a Ford tire replacement

---

[23]      Even if the Kaplan Affidavit were properly before the Court on summary judgment (which it is not), that exhibit would appear to do no more than create a genuine issue of material fact as to whether Mazda notified Garry Foster of SSP 53 and its assessment that the risk of tire failures warranted replacement of the Wilderness AT tires on his vehicle as of August 2001.  Of course, such factual disputes are resolved in favor of the nonmovant on summary judgment.

program.  On the strength of these undisputed facts, defendant Ford Motor Company seeks entry of summary judgment in its favor on Count IV.

Plaintiff's initial rejoinder to the foregoing is that "Ford's motion is misplaced in that it omits that it admits it designed and developed the B4000 and its sister vehicle, the Ford Ranger." (Doc. 145, at 13.)  This argument is, on its face, a red herring; indeed, plaintiff has withdrawn all of her claims (including negligence/wantonness claims) against Mazda and Ford relating to any "manufacturing and/or design defect regarding the subject vehicle."  (*Id.* at 4 n.1.)  Whether Ford designed the truck involved in the June 2009 accident is irrelevant to the remaining claims. Next, plaintiff opposes Ford's Motion because the record shows that Ford "took an active role regarding the initial August 2000 recall."  (*Id.* at 13.)  That's all well and good, but how does involvement in Firestone's August 2000 recall establish liability on Count IV, which is now confined to implementation of the SSP 53 tire replacement program beginning in August 2001? Plaintiff does not maintain in the remaining portion of Count IV that Mazda and Ford were negligent as to Firestone's August 2000 recall; rather, the theory animating the claim is that these defendants failed to take adequate steps to recall / replace Wilderness AT tires as of mid-2001, when they knew "of possible issues with Wilson manufactured Wilderness AT tires."  (*Id.* at 9.) Absent a showing that Ford "took an active role" in SSP 53, Count IV is not cognizable as to that defendant.

Finally, plaintiff asserts that Ford may be held liable on Count IV because record evidence shows that "Ford paid the costs associated with the May 2001 decision to replace the Wilderness AT tires and Mazda relied on Ford's interpretation of data … when making the determination to replace those defective tires."  (*Id.* at 13.)  To be sure, plaintiff does not suggest that Ford negligently interpreted the data on Wilderness AT tires' safety risks, or that Ford somehow financially crippled or manipulated Mazda to block it from providing adequate notice of SSP 53 to B-Series vehicle owners like Garry Foster.  Instead, plaintiff's theory is that "Mazda's program and Ford's were very much aligned and acting a joint venture and/or agency context with one another."  (*Id.* at 10.)  Plaintiff does not identify the legal elements of a joint venture or agency relationship, much less explain how the cursory record facts that Ford shared data with Mazda and agreed to pay for Mazda's replacement program satisfy those elements. Under even moderate scrutiny of the facts and applicable legal standards, these joint venture and agency theories crumble away.

Under Alabama law, "[t]he elements of a joint venture have been held to be: a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise. … [I]t is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control." *McLemore v. Hyundai Motor Mfg. Alabama, LLC*, 7 So.3d 318, 331 (Ala. 2008) (citations omitted).  Of course, "[t]he burden of establishing the existence of a joint venture is upon the party asserting that the relation exists." *Id.* (citations omitted).  Where is the evidence that Ford and Mazda had a shared community of interest in the implementation of SSP 53, a tire replacement program confined to Mazda vehicles?  Plaintiff offers none.  Where is the evidence that Ford possessed a right to joint control over SSP 53, or that it had any say whatsoever in the means, methods and measures Mazda used to contact eligible vehicle owners to notify them of known tire safety issues and their tire replacement rights?  Again, the record is devoid of anything of the sort.

Similar problems defeat plaintiff's cursory invocation of an agency theory.  "Under Alabama law, the test of agency is the right of control, whether exercised or not. … For one to be an agent, the other party must retain the right to direct the manner in which the business shall be done, as well as the results to be accomplished, or, in other words, not only what shall be done, but how it shall be done." *Franklin v. Mitchell*, 87 So.3d 573, 580-81 (Ala.Civ.App. 2011) (citations omitted).  "The party asserting agency has the burden of presenting sufficient evidence to prove its existence." *Ex parte Steadman*, 812 So.2d 290, 294 (Ala. 2001).  At most, plaintiff's evidence reveals that Ford shared tire-failure data with Mazda, paid for Mazda's replacement program, and operated a similar replacement program of its own.  That showing falls far short of supporting a reasonable inference that Ford retained a right to direct or control the manner in which SSP 53 was carried out by Mazda, or that Mazda possessed any reciprocal right of control with respect to Ford's tire replacement program.

In sum, plaintiff has failed to identify any evidence that Ford was meaningfully involved in the SSP 53 tire replacement program implemented by Mazda.  She has not presented evidence raising a reasonable inference that Ford and Mazda were joint venturers or that a principal/agent relationship existed between them with respect to that program.  She has not shown that Ford had

any role in or control over the means and methods selected by Mazda for notifying eligible vehicle owners of Mazda's offer to replace their Wilderness AT tires for free because of concerns over elevated failure risks.  And she certainly has not shown that Ford was involved in the mechanics of the implementation of SSP 53 in any material way.

A plaintiff does not withstand a Motion for Summary Judgment by wishful thinking or sleight of hand.  Bandying about vague and conclusory labels is no substitute for rigorous analysis and presentation of evidence from which a factfinder could reasonably impute liability. Plaintiff has failed to meet this burden; therefore, the Motion for Summary Judgment is **granted** as to defendant Ford Motor Company, given the dearth of proof that Ford breached any duty owed to plaintiff's decedent or Garry Foster, or that it made any decisions for, had any role in, or provided any technical consultation to Mazda in connection with notification aspects of Mazda's August 2001 tire replacement program.

**VI.    Conclusion.**

For all of the foregoing reasons, it is **ordered** as follows:

1.    Pursuant to plaintiff's voluntary withdrawal of certain causes of action, the entirety of Counts V and VI of the Amended Complaint, as well as that portion of Count IV relating to alleged manufacturing or design defects in the subject vehicle, are **dismissed**, and the Motion for Summary Judgment (doc. 135) is **moot** as to those claims;

2.    The Motion to Preclude Certain Testimony of Plaintiff's Expert, Troy Cottles (doc. 138) is **moot** because plaintiff does not intend to offer expert testimony from that witness concerning implementation and sufficiency of tire recall or replacement programs;

3.    Plaintiff's Motion to Strike Defendant's Summary Judgment Affidavit (doc. 149) is **granted** as to the third, fourth and fifth paragraphs of the Kaplan Affidavit. Those portions of defendants' Exhibit 7 are **stricken** for non-compliance with Rule 56(c)(4) of the Federal Rules of Civil Procedure;

4.    Defendant Ford's Motion to Strike Notice of Supplemental Authority (doc. 156) is **granted**, and plaintiff's Notice of Filing Supplemental Authority (doc. 155) is **stricken**;

5.      The Motion for Summary Judgment (doc. 135) is **granted** with respect to defendant Ford Motor Company.  All claims against that defendant are **dismissed with prejudice**, and the Clerk of Court is directed to **terminate** Ford as a party defendant in this matter;

6.      The Motion for Summary Judgment (doc. 135) is likewise **granted** with respect to the portion of Count IV alleging negligent, wanton, or reckless selection of a replacement tire for Mazda B-Series trucks in connection with Firestone's August 2000 recall, and that claim against Mazda Motor Corporation and Mazda Motor of America, Inc. is **dismissed**; and

7.      The Motion for Summary Judgment (doc. 135) is **denied** with respect to the portions of Count IV alleging negligent, wanton or reckless implementation of tire replacement / recall program by defendants Mazda Motor Corporation and Mazda Motor of America, Inc.  Plaintiff may proceed to trial against those Mazda defendants on her theory that they did not take reasonable and appropriate means to notify Mazda owners (and particularly Garry Foster, then-owner of the subject vehicle) of the elevated failure rates of Wilderness AT tires that Mazda had placed on their B-Series trucks and the availability of Mazda's voluntary tire replacement program known as SSP 53 beginning in August 2001.

DONE and ORDERED this 3rd day of April, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE